Mr. Brooks at a different table this time. Good morning, Your Honors. My name is Todd Seip. I represent the appellant, American General S.I.P.E. American General Financial Services of Illinois, Inc. Mr. Brooks, we know who you are. Good morning once again, Your Honors. Lloyd Brooks and I represent Ms. Theresa Dimoff. Okay, 15 minutes per side. Let's save some time for rebuttal and we'll try to let you make something of an argument before we launch in and ask some bombastic questions. May it please the Court, from our viewpoint, the issue on appeal is very simple and straightforward. Ms. Dimoff, the appellee, entered into an arbitration agreement that unambiguously required that her counterclaims in this case be arbitrated. Nevertheless, despite the plain language of the agreement that she entered into, she chose to file her claims in court. As a consequence, American General filed a motion to compel arbitration of those counterclaims and to enforce the arbitration agreement. The relief sought in the motion was precisely that afforded by the Federal Arbitration Act, or the FAA, which was to stay the case and to compel the arbitration of those counterclaims and to enforce the arbitration agreement. And that's what we're trying to do here, is to make it clear to the Court that there is no possibility that there is ever going to be an arbitration ever on this case. There will be. If the Court orders it, there certainly would be an arbitration on this case. But one side, the second possible arbitration agency says they won't. That is not true, Your Honor, from the evidence that we've presented. The American Arbitration Association, which would be the arbitrator in this case, does have a moratorium on certain consumer finance disputes. Right. Particularly If it's brought by the bank or the lender, right? Yeah, one that is filed by the bank with the AAA. Right. With the AAA. During our briefing on this issue, the Quick Clip case was decided and we had supplemental briefing on the impact of that case on this issue. During that briefing, we communicated with AAA and we presented evidence to AAA itself regarding the scope of its moratorium. In particular, what AAA said was that the moratorium only applies in situations in which a business files a claim with the AAA. And they further elaborated that even in situations where the moratorium would otherwise apply, they would still take the arbitration if there is a court order compelling arbitration. Let me just cut to the chase. I think the trial court acknowledged that this was an arbitrable matter, that even the complaint by the borrower that the agreement itself was somehow unconscionable, they didn't really present any persuasive argument on that. But it comes down to whether or not there are matters, legal constraints that are extrinsic to their agreement that prevent arbitration. I take it that you think Quick Clip missed the mark a little bit. Tell us in what way it did and what this court ought to do in your judgment. Well, a couple of things about Quick Clip. I do think that it missed the mark, but I also think our case is distinguishable from Quick Clip. And let me go through a few of the reasons why I think Quick Clip doesn't apply here. The court itself distinguished Quick Clip, by the way, in its order, noting that in Quick Clip there had been a finding by the trial court that the moratorium applied in that case. Was that a correct finding in your judgment? I don't think it was a correct finding. But there was a finding by the trial court. And AAA had not weighed in on it. And AAA, the relevant arbitration association here, was not asked to weigh in on it until after the trial court ordered. And AAA decided they didn't want to get involved at that point. And so there was no input at all from AAA in that case. So in our case, as the court itself noted, the circuit court noted, is that there hadn't been any rulings on it. There hadn't been any findings with regard to whether the moratorium applied. And, in fact, AAA had provided some additional information that wasn't available in the Quick Clip case about the scope of its moratorium. In this case, obviously, there was no findings of fact regarding the scope of the moratorium by the circuit court. They specifically found that the circuit court felt, based on this distinguishing fact, that the AAA itself should be the one to determine whether or not their Another significant distinction is that one thing that was not addressed in the Quick Clip case was what the courts commonly refer to as a delegation provision. And a delegation provision exists in this arbitration agreement. It specifically says that issues relating to the enforceability of the arbitration agreement as a whole must, in itself, be determined by the arbitrator. And the Supreme Court, U.S. Supreme Court, has held that that is an enforceable provision and that, in this case, Ms. Dimoff had brought a number of arguments regarding the enforceability of the arbitration agreement as a whole, unconscionability arguments. But this argument, saying that the agreement is unenforceable based on the unavailability of AAA, is an additional argument we feel is covered by the delegation provision and should be resolved by AAA. And we believe the court's decision supported that. Let me ask you a question on something that my colleague, Justice Smith, alluded to. And that is, you know, these cases are all denominated, a motion to compel arbitration and to stay proceedings. Asking for two different things, stay proceedings in the foreclosure and compel it to be arbitrated because of the arbitration agreement. Can the court really force anybody to arbitrate? Isn't that a bit of a misnomer? Yes, I agree. It is a misnomer. I think the word compel, I think, is a little bit of a term of art. It's what is in the title of the statute. It's a colloquialism, isn't it, really, rather than what the court has the power to do? I would agree with that. I would agree that the order to compel arbitration is only to the extent that is in the agreement. And the arbitration agreement itself does not compel anybody to file anything. What it is, it's basically a form selection agreement. And it says, if you're going to pursue a claim, this is how you have to do it and where you have to do it. Let's then, again, cut to the chase. And what is the relief, then, that you're asking, that you wanted from the trial court and that you're now asking us to tell the trial court to do? We're asking the trial court, and what we're asking this court to do, is to stay the case and to order the entered order saying that the claims brought by Ms. Dimoff, the counterclaims of Ms. Dimoff, cannot be perceived in court, but must, if she chooses to bring them, be brought in front of the arbitrator. Basically, strictly to enforce the agreement. What if there's more delaying and it isn't filed? What are the, you know, if Ms. Dimoff decides, eh, actually, I don't want to complain about this anymore. And that's occurred, too, in cases. And what generally happens, a lot of times what the judges will do in their discretion is put a time limit, 60 days, 90 days, something along those lines. We've cited at least one case in our briefs where they didn't file for a protracted period of time and the court went ahead and it was a Seventh Amendment case, it was a federal court, obviously, but the court went ahead and dismissed the claims eventually, saying you had plenty of time to bring them in arbitration and you chose not to, which is their right, obviously, and the claims were dismissed. So, I think there was a misunderstanding, and I think this is the point you're making, of the relief that was being sought here. It wasn't to force anybody, either us or her, to actually file our claims in arbitration. It was to enforce the actual agreement, which says that if you're going to bring these claims, you need to bring them in front of the arbitrator. You cannot proceed with them in court, because that's what the agreement unambiguously provides. Before you wrap up, why don't you address this issue in reading the record. It seemed like the trial court was, in essence, giving you, your client, 21 days to file arbitration against itself. Well, it took us by surprise, and it also took AAA by surprise in trying to navigate through that. We did make an attempt to do that, actually. It's difficult because it doesn't contemplate somebody filing a claim against themselves. But that would be the lender filing an arbitration. Against himself. That would play right into the moratorium language, wouldn't it? Exactly. That's what happened. It was odd, first of all, because you have to determine what the claim is for, what relief you're seeking, and all this is tied to the fees that are involved. So the whole process doesn't contemplate that. But the ironic result was that, as we provided evidence from AAA, is that the filing party for the purpose of the moratorium is the one that files the claim with AAA. So in this instance, we, pursuant to the court's order, the business was the lender filing, and there was no order compelling arbitration. It actually fell right into the moratorium. And the point is that that was completely consistent with the evidence we provided to the court, and not a surprise at all. And I believe the evidence would have supported that they would have taken it if an order had been entered granting our motion. Now, the court obviously didn't decide that. They decided that the AAA should decide that. But that was consistent with the evidence we presented to the court. Thank you. Thank you. Mr. Brooks, why should they file arbitration against themselves? How does that make any sense? Well, Your Honor, I addressed this in the response brief. They're not actually filing a claim against themselves. Instead, what they're doing is seeking to have AAA be the referee of a dispute between themselves and miss them off, just as you discussed with counsel. But wouldn't you be committing legal malpractice if you didn't raise the moratorium if they filed something? Well, I don't know about legal malpractice, but it certainly is an issue. I mean, acting in the best interest of your clients, it seems to me you'd say there's a moratorium against lender-filed arbitrations. And as counsel indicated, and we don't dispute, AAA is allowed to interpret its own imposed moratorium. The problem is, for American General, AAA interpreted its moratorium as precluding it from refereeing a dispute involving my client and it if American General was the person who asked for it. Clearly the dispute is my client saying American General violated the Truth in Lending Act as well as some other statutes. Right. It's your client. AAA could see that. They submitted a copy of the claim with their filing documents. AAA still determined we didn't want to have anything to do with this arbitration. Well, if this is so important to have these counterclaims for the Truth in Lending Act heard, why don't you volunteer to the court that you, on behalf of your client, would file it so as to avoid any moratorium? Well, quite frankly, Your Honor, my client wishes her forum for her dispute to be with the circuit court and not arbitration. Maybe she shouldn't have signed the arbitration agreement. Well, Your Honor, that's a whole other story, and that gets into whether or not we think the arbitration agreement was conscionable or unconscionable. That argument, you can't go anywhere with that argument because the trial court, which helped you out here, said specifically that there was no persuasive argument raised regarding unconscionability. And, again, we're not here arguing that because, quite frankly, we can't. We're not at this point where we can appeal that part of Judge Gillespie's order. We disagree with it, and we've said so, but that's not really what's before this court, whether or not it was conscionable or unconscionable, because, quite frankly, she denied the motion. And so now the only issue that's before the court was, could she properly deny that motion for whatever grounds? And not until there, if there had been a decision, and quite frankly what I think Judge Gillespie set up is exactly what she wanted and what happened here was she didn't want to be the determining entity of whether or not AAA takes this or not takes this, because she recognized that Quick Click had a point, that if AAA was going to institute a moratorium, there could not be an arbitration. She didn't want to be the person who made that call. AAA makes the call. She granted American General leave to ask AAA to make the call. The problem American General has is they recognize that they wanted Ms. Dimoff to be the person who asked to make the call, because they felt that might heighten. It's her counterclaim. She's the one with the beef. Why shouldn't she be considered the person filing? Because unless she's required to do it, she doesn't have to. And under the arbitration agreement, which I agree with counsel. You know why you don't want to, because Ms. Dimoff doesn't want to have to pay for the cost of arbitration. That was an issue raised with conscionability. And, again, I have my disputes with what Judge Gillespie did there. But, again, that's not the issue we have before the court. Our issue today is was Ms. Dimoff required to file it? The arbitration agreement is very clear. Either party could elect to start arbitration. There was no requirement that either American General seek arbitration or Ms. Dimoff. Instead, if either party had a beef with the other, they could go to court if they wished. And if the other party says I don't want to be here, I want to be in arbitration, then that's where you go. Counsel, that's why there's an entire body of case law on motion to compel arbitration in state proceedings. Sure. What you have here is a lender who had the right to file a foreclosure action. And specifically in the agreement, it said that if the lender does exercise its foreclosure remedy and the borrower wants to challenge that in any way, shape, or form, it has to go to arbitration. Well, actually, Your Honor, that's not how. How can you avoid arbitration? Let me now look directly to the record. The actual agreement does not say that, Your Honor. Instead, what the agreement does is sets forth kind of two separate sections of the world, so to speak. Claims that are covered, and covered claims fit into the arbitrable arena. And even there, again, if you look at the actual language of the agreement, which I agree with counsel and the circuit court, we have to follow the language of the agreement, not some philosophy that we want to have arbitrations. No, we have to follow the agreement. The agreement says either party can elect arbitration of a dispute, even if it's already been started in court. And that's something we strongly disagree with American General's counsel on. We do have the right to file a claim in court, and we do recognize that American General may have the right, if it wishes, to ask that that dispute be moved to arbitration. That's what occurred here. But back to my point. Covered claims fit into that category. Non-covered claims can stay in court and cannot be even elected into arbitration. Covered claims would have included my client's counterclaims. But again, she had the election to go to court with them. And if American General wished, it could start arbitration, which I think is the whole problem here. The language of this agreement does not require Ms. Dimoff to be the person who contacts AAA and says, I have a problem with American General. Will you please referee the dispute? Instead, the agreement expressly says, even if Ms. Dimoff goes to court, American General can contact AAA and say, hey, we've got a dispute with a consumer. Please referee. You think that American General ought to file for arbitration against itself on your client's counterclaims? Again, it's not filing arbitration against itself. It's not like it's filing a claim against itself. Instead, what they're doing is simply notifying AAA. But if they're the filing party, they have to pay. So they should pay for arbitration of claims raised by your client that the agreement says should be subject to arbitration. They should pay for it? Their agreement, again, we're going back to the contract language. Their agreement set this forth, not Ms. Dimoff. Ms. Dimoff didn't draft this language. American General did. They have to comply with their own language just like they're asking Ms. Dimoff to do. It's the language of the agreement that governs. Please wrap up. Sure. I think that's the problem, is that American General now has a problem with following the language that's actually in the agreement as opposed to simply, well, we want to arbitrate, so make Ms. Dimoff do it. And if you look at the motion that they filed, there's been some discussion about how it was labeled. The relief that is requested is what actually is at issue. The relief requested in that motion was to compel Ms. Dimoff to start arbitration. That's what they're all called, counsel. No, no, no, no. I'm not talking about the title. The relief, the prayer for relief says we want you to compel Ms. Dimoff. And the whole point here is, did Judge Gillespie abuse her discretion in reading the language of the agreement and saying, I'm not disputing that this is an arbitrable claim, but the agreement doesn't say I have to make Ms. Dimoff start it. It says you can start it if you want to. That's only if we accept your position on the standard of review, being abuse of discretion rather than de novo. Correct. That does play into that, because, again, the language of the agreement left the court some discretion as to, oh, you're the one who wants this in arbitration, because clearly Ms. Dimoff doesn't. American General wants it in arbitration. What's wrong with looking at the agreement and saying, oh, since either party can start it, you want it, go ahead and start it. The circuit court should be put in the position of saying, well, I want to fix this so that I guarantee there will be an arbitration. And AAA might turn it down if American General asks. So I'm going to finagle this and make Ms. Dimoff file it so that there will be an arbitration. That's essentially what American General is asking this court to do. Thank you. Just a couple quick points. I just want to make clear that I agree the agreement doesn't require anybody to file anything. That's not what's in the agreement. And that's not what we're seeking here. What the agreement says is that if American General brings certain claims or if Ms. Dimoff brings certain claims and they're covered by the arbitration agreement, they have to be arbitrated. And with respect to the language she was pointing into, the arbitration agreement, I'm not going to get into much of the arbitration agreement before you. It's clear. The language she was talking about, electing and so on, is not the applicable language here. There's a provision that specifically talks about counterclaims to foreclosures. That's crystal clear that they say they must be arbitrated, and it's crystal clear, therefore, that they cannot be brought in court. And the trial court so held. And the trial court had no problem reaching that conclusion. And, you know, the elect issue is really kind of a non-issue anyway since as soon as he filed the claims improperly, we notified them of the agreement and said they had to be arbitrated. So even if it had fallen under that provision, it had been triggered, and at that point they were required to be arbitrated. So I think the agreement is clear, and I think the relief that was appropriate here is clear as well. Okay. Thank you. Thank you. We'll take it under advisement.